# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| James B. Middleton, *et al*. | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 21-cv-2301 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 3, 7, 11 |
| | : | | |
| Larry Pratt, *et al*. | : | | |
| | : | | |
| Defendants. | : | | |

## <u>MEMORANDUM OPINION</u>

### Denying Plaintiffs' Motion to Remand and Granting Certain Defendants' Motions to Dismiss

## I.  INTRODUCTION

James B. and Marvise Middleton ("Plaintiffs"), proceeding *pro se*, brought claims against various defendants in connection with the impending foreclosure of their Washington, D.C. property.  Defendants removed the case from D.C. Superior Court and filed motions to dismiss. Plaintiffs filed a motion to remand alleging procedural defects in the removal and challenging this Court's jurisdiction.  Because the Court finds no procedural defect in the removal and is persuaded that it has jurisdiction, the Court denies Plaintiffs' Motion to Remand.  In addition, because the Court finds that Plaintiffs fail to state any claims against the Defendants who have moved to dismiss,[1] the Court grants those motions to dismiss.

---

[1] As the Court will explain, Plaintiffs apparently have not served all of the Defendants, and several Defendants have not appeared in the case.  The Court will not here reach those claims against Defendants who have yet to appear.

## II.  BACKGROUND[2]

The court gleans the following facts from the pleadings, motions, and associated filings. On or around April 5, 2005, *pro se* Plaintiffs James B. and Marvise Middleton "issued a Promissory Note ('Note') to facilitate a loan in the amount of $229,600.000 to" Defendant First Savings Mortgage Corporation ("First Savings") and pledged a Deed of Trust ("Deed") on their home in Washington, D.C. (the "Property").  *See* Superior Court Record ("Sup. Ct. R.") at ECF pp. 35, 42, ECF No. 4.

The Deed contains sections relevant to the instant decision.  The Deed grants the Trustee "power of sale" over the Property in the event Plaintiffs do not meet their obligations on the Note.  *See* Deed of Trust at ECF p. 4, ECF 3-3.  The Deed also contains a Release clause, which reads, "[u]pon payment of all sums secured by this Security Instrument, [First Savings] shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall release this Security Instrument." *Id*. at ECF p. 14.

The Deed names Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") nominee-beneficiary for First Savings.  *Id*. at ECF p. 3.  On August 22, 2012, MERS, acting as nominee for First Savings, transferred First Savings' interest in the Deed to Defendant Bank of New York Mellon Trust Company ("Mellon").[3]  Exhibit C to Defs.' Mot. to Dismiss Pls.' Am. Compl. ("Assignment of Deed") at ECF p. 2, ECF No. 3-4.

---

[2] "[A]t this stage of the litigation, the court must accept as true all material allegations of the complaint, drawing all reasonable inferences from those allegations in [Plaintiffs'] favor." *Zimmerman v. Al Jazeera Am.*, LLC, 246 F. Supp. 3d 257, 285 (D.D.C. 2017) (quoting *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011) (cleaned up and emphasis original)).

[3] The court will also use "Mellon" to refer to both Residential Asset Mortgage Products, Inc., for which Mellon is the Trustee, and to JP Morgan Chase Bank, whom Mellon succeeded. *See* Not. of Removal at ECF p. 2.

On July 14, 2021, Plaintiffs filed their first complaint ("Complaint") against Defendants First Savings Mortgage Corporation; Residential Asset Mortgage Products, Inc.; JPMorgan Chase Bank, NA; Residential Funding Corporation; MERS; and Does 1–100 asserting wrongful foreclosure, breach of contract, quiet title, and slander of title claims in relation to the impending foreclosure of the Property.  Sup. Ct. R. at ECF pp. 34–49, ECF No. 4.[4]  Plaintiffs sought injunctive, declaratory, and compensatory relief.  *Id.* at ECF p. 36.  Plaintiffs later filed their Amended Complaint.  *Id.* at ECF p. 26–31.

The Amended Complaint differs notably from the original Complaint in several ways. Unlike the Complaint, Plaintiffs' Amended Complaint appears to have been typed into a court-provided form and does not assert any new claims, nor does it restate the claims from the Complaint.  *See id.*  The Amended Complaint also does not name any of the original Defendants, and under the pre-set heading "Additional Party Names and Addresses," Plaintiffs list seven new defendants: "Larry Pratt CEO for [First Savings]," "Glen Messina for Ocwen Financial Corporation," "Alvaro G[.] de Melina CEO for GMAC LLC Corporate Office," "Bruce J. Paradis CEO for Residential Funding LLC," "B[aron] Silverstein CEO for [NewRez]-PHH Mortgage Services," "James Dimon CEO for JPMorgan Chase," and "Thomas P. Gibbons for The Bank of [New York] Mellon."[5]  *Compare id.* at ECF p. 34 *with id.* at ECF pp. 26–28.  It is

---

[4] On the same day, Plaintiffs also filed for a Temporary Restraining Order on the foreclosure of their property, Sup. Ct. R. at ECF pp. 81–87, ECF No. 4, which the Superior Court denied, *id.* at ECF p. 3.

[5] Because Plaintiffs list these seven entirely new defendants in their Amended Complaint, the Court understands Plaintiffs to name these defendants in addition to the original five.  *See Ferebee v. United Medical Ctr.*, 300 F. Supp. 3d 271, 275 (D.D.C. 2018) ("It is well established that a court must 'liberally construe' the pleadings of *pro se* parties, and that a *pro se* complaint, 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (cleaned up)).  The Court will use "Defendants" to refer to all 12 defendants whose names appear in the Complaint and Amended Complaint.

unclear if Plaintiffs name these new Defendants as individual officers, the entities they represent, or both. *Id*. at ECF pp. 26–28.[6]  Finally, Plaintiffs requested, in addition to their previous prayers for relief, that their "credit be repaired." *Id*. at ECF p. 30.

On August 30, 2021, Defendants Mellon, Ocwen, Messina, NewRez, and Silverstein (the "moving Defendants") removed this case from D.C. Superior Court.  Not. of Removal, ECF No. 1.  The moving Defendants allege that none of them were served with the original Complaint, and that only Ocwen received the Amended Complaint. *Id*. at 3; *see also* Am. Not. of Removal at 5.  The Court's examination of the record from the Superior Court reveals a number of summonses for the Defendants, *see* Sup. Ct. R. at ECF pp. 68, 79–80, 103–108, but only Ocwen appears to have received the pleadings by certified mail, *id*. at ECF p. 53.

The moving Defendants allege that Plaintiffs are citizens of either Maryland or the District and that no Defendant is a citizen of either.  Not. of Removal ¶¶ 5–6; Am. Not. of Removal at 4–8.  Defendants do not support their allegations with affidavits or other forms of evidence. *Id*.  Defendants ultimately assert that each Defendant is diverse from Plaintiffs, that the amount in controversy exceeds $75,000, and that therefore this Court has diversity jurisdiction to hear the case.  Am. Not. of Removal at 2.

On September 7, 2021, the moving Defendants filed a Motion to Dismiss.  Defs.' Mot. to Dismiss Pls.' Am. Compl. ("Mot. to Dismiss"), ECF No. 3.  On September 28, 2021, the Court ordered Plaintiffs to respond to the Motion to Dismiss by October 28, 2021.  Order ("First *Fox/Neal* Order"), ECF No. 5.  Plaintiffs filed a Motion to Remand on October 27, 2021, but did

---

[6] Defendants appear to share the Court's confusion.  For example, the Notice of Removal was filed by, among others, both Glen Messina and Ocwen Financial Corporation ("Ocwen") and both Baron Silverstein and NewRez-PHH Mortgage Services ("NewRez").  Not. of Removal at 2.  The Notice of Removal also alleges the states of citizenship of both the officers whose names appear on the Amended Complaint and the entities they allegedly represent. *Id*. at 4–7.

not address the substantive arguments made in the moving Defendants' Motion to Dismiss.  Pls.' Mot. to Remand Defs. Notice of Removal and Mot. to Dismiss.  ("Mot. to Remand."), ECF No. 7.  Plaintiffs allege "one of the Defendant(s)" is not diverse, but do not identify which defendant is not diverse or explain why.  *Id*. at 2.

On November 10, 2021, the moving Defendants filed their Opposition to Plaintiffs' Motion to Remand and argued that their Motion to Dismiss should be granted as conceded.  Defs.' Opp'n to Pls.' Mot. to Remand Defs. Notice of Removal and Mot. to Dismiss, ECF No. 8.  Defendants again asserted that each Defendant is diverse, and identified the states in which they are citizens.  *See* Defs. Mem. Supp. Opp'n to Pls.' Mot. to Remand ("Opp'n.") at 5–7, ECF No. 8-1.

On January 6, 2022, Defendant Larry Pratt, individually, filed a Motion to Dismiss.[7]  Def. Larry Pratt's Mot. to Dismiss Pls.' Am. Compl., or Alt., Mot. for Summ. J. ("Pratt Mot. to Dismiss"), ECF No. 11.  At this point, all Defendants had filed or joined in motions to dismiss except Dimon, Gibbons, Paradis, and Molina, and the businesses for which they are officers (the "non-moving Defendants").  Like the other motion to dismiss, Pratt's motion did not cite any affidavits or other evidence to establish that Pratt was diverse from Plaintiffs.  *See id.*  The same day that Pratt filed his motion to dismiss, this Court ordered Plaintiffs to respond to it by February 7, 2022.  Order ("Second *Fox*/*Neal* Order"), ECF No. 12.  On February 3, 2022, Plaintiffs filed their Opposition to Pratt's Motion to Dismiss.  Mem. Opp'n to Defs.' Mot. to Dismiss ("Mem."), ECF No. 13.  Plaintiffs reasserted their jurisdictional challenge without

---

[7] Because Pratt has filed a motion to dismiss, the Court will also refer to Pratt as a "moving Defendant."

specifying which Defendant is allegedly not diverse and without addressing any arguments raised by the moving Defendants. *Id*. at 1.[8]

On April 8, 2022, the Court granted leave for the moving Defendants to cure defects in their jurisdictional allegations, which had relied on the individual officer Defendants' residencies to plead diversity of citizenship. *See* Order, ECF No. 14.  On April 15, 2022, the moving Defendants filed their Amended Notice of Removal which alleged diversity of citizenship on the basis of the individual officer's domiciles.  Am. Not. of Removal at 4–8, ECF No. 15.

### III.  ANALYSIS—MOTION FOR REMAND

Plaintiffs make two arguments for remand: 1) Defendants failed to "agree or give consent to . . . removal," and 2) this Court lacks subject matter jurisdiction because "all of the parties fall under the diversity jurisdiction except for one of the Defendant(s)."  Mot. to Remand at 1–2. The moving Defendants respond that 1) Defendants were not required to give unanimous consent because only Ocwen was served, *see* Opp'n. at 8–9, 2) Plaintiffs' Motion to Remand should be dismissed, in total, as untimely, *id*. at 3–4, and 3) this Court has subject matter jurisdiction because all Defendants are diverse, *id*. at 4–5; Not. of Removal ¶¶. 21–22; Am. Not. of Removal at 3.  The Court finds it has jurisdiction over the claims against the moving Defendants and denies Plaintiffs' Motion to Remand.

### A.  Legal Standard

Generally, a defendant in a civil action brought in state court may remove the action to a federal district court if the action is one over which the federal district courts have original jurisdiction. *See* 28 U.S.C. § 1441(a).  The Superior Court for the District of Columbia is

---

[8] Plaintiffs' Memorandum did not identify which Motion to Dismiss it addressed.  The Court find this of no consequence because, for reasons discussed below, the Court dismisses all claims against the moving Defendants.

considered a state court for this purpose.  *See id*. § 1451(1).  The D.C. Circuit has explained,

"[w]hen it appears that a district court lacks subject matter jurisdiction over a case that has been

removed from a state court, the district court must remand the case."  *Republic of Venez. v.

Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002) (citing 28 U.S.C. § 1447(c)).  Because

removal implicates "federalism concerns," the court "strictly construes the scope of its removal

jurisdiction."  *Downey v. Ambassador Dev., LLC*, 568 F. Supp. 2d 28, 30 (D.D.C.

2008) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107–09 (1941) (other citations

omitted)).

The general removal statute provides, "[a] motion to remand the case on the basis of any

defect other than lack of subject matter jurisdiction must be made within 30 days after the filing

of the notice of removal," however, "[i]f at *any time* before final judgment it appears that the

district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. 1447(c)

(emphasis added).  Thus, while "a motion to remand for defective procedure must be made

within 30 days after the filing" of the notice of removal,  *Williams v. Howard Univ.,* 984 F. Supp.

27, 30 (DDC 1997), there is no such time limit for challenges to the federal court's subject-

matter jurisdiction*, see 1368 H St., LLC v. Akers*, No. 16-CV-02099, 2016 WL 10655557, *1

(D.D.C. Oct., 21, 2016); *Busby v. Capital One, N.A.*, 841 F. Supp. 2d 49, 53 (D.D.C. 2012) ("In

the event that the federal court lacks subject-matter jurisdiction, remand is mandatory." (citing

*Republic of Venez.*, 287 F.3d at 196)).

### B.  Consent to Removal

"[A]ll defendants who have been properly joined and served must join in or consent to

the removal of the action."  *See* 28 U.S.C. 1446(b)(2).  This requirement that all defendants

consent to removal has been termed the "rule of unanimity."  *Hurt v. District of Columbia*, 869

F. Supp. 2d 84, 86 (D.D.C. 2012) (collecting cases).  One exception to the rule of unanimity is "where one or more of the defendants has not yet been served with the initial pleading at the time the removal petition was filed."  *Id*. at 87.

"The plaintiff bears the burden of establishing . . . proper service of process."  *Klayman v. Obama*, 125 F. Supp. 3d 67, 77 (D.D.C. 2015) (citing *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987).  "Since this action was commenced in D.C. Superior Court, the sufficiency of process is determined by District of Columbia law."  *Magowan v. Lowery*, 166 F. Supp. 3d 39, 65–66 (D.D.C. 2016) ("In determining the validity of service in the state court prior to removal, a federal court must apply the law of the state under which the service was made." (quoting 4A Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedure § 1082 (4th ed. 2015))); *McMullen v. Synchrony Bank*, 82 F. Supp. 3d 133, 142 ("[T]he Federal Rules of Civil Procedure do not apply to a civil action until it is in federal court." (citing Fed. R. Civ. P. 81(c))).  However, "[u]pon removal of the case, the plaintiff [has] an opportunity to cure the insufficiency of [their] service of process by properly effectuating service under the Federal Rules of Civil Procedure."  *Magowan*, 166 F. Supp. 3d at 66 (citing Wright, Miller & Steinman, *supra*, § 1082).  *But see Rogers v. Amalgamated Transit Union Local* 689, 98 F. Supp. 3d 1, 4–5 (D.D.C. 2015) (analyzing service of process prior to removal under federal rules).[9]

The moving Defendants argue that only Ocwen was properly served with the Amended Complaint and that no moving Defendant was served with the original Complaint.  *See* Not. of Removal ¶ 2; Opp'n at 8–9; *see* Am. Not. of Removal at 5.  Because Plaintiffs have not argued or attempted to demonstrate that service was proper under either the D.C. or the federal rules, or

---

[9] For the purposes of this decision, it is unnecessary to decide whether the D.C. Superior Court Rules or the Federal Rules of Civil Procedure apply because Plaintiffs have not demonstrated that service of process was proper under either.

that it has been perfected at any point since, Plaintiffs fail to meet their burden to establish proper service of process. Consequently, the Court cannot conclude that all Defendants have been properly served and therefore does not apply the rule of unanimity. *See Hurt*, 869 F. Supp. 2d at 87 (rule of unanimity does not apply "where one or more of the defendants [have] not yet been served.").

Even if the removal did suffer from procedural defects, the Court would find Plaintiffs' procedural, consent-based challenge to the removal time-barred. Plaintiffs did not file their Motion to Remand until nearly two-months after Defendants' Notice of Removal. *See* Mot. to Remand. This is beyond the 30-day time limit imposed by 28 U.S.C. 1447(c).

### C. Subject Matter Jurisdiction

Federal courts may exercise diversity jurisdiction over civil cases where 1) the matter in controversy exceeds $75,000 and 2) no defendant is a citizen of any state of which the plaintiff is a citizen. 28 U.S.C. § 1332(a)(1), *see Saadeh v. Farouki*, 107 F.3d 52, 55 (D.C. Cir. 1997) ("[F]ederal diversity jurisdiction is lacking if there are any litigants from the same state on opposing sides.") (citation omitted)). Therefore, removal based on diversity jurisdiction is improper where the parties are not completely diverse. *See Burton v. Coburn*, No. 4-CV-965, 2005 WL 607912, at *2 (D.D.C. March 16, 2005) (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996)).

The method for determining a party's citizenship depends on whether it is a natural person or an entity, and, if the latter, on what kind of entity it is. "For purposes of diversity jurisdiction, a person is a 'citizen of the State' in which he [or she] is domiciled." *Core VCT Plc v. Hensley*, 59 F. Supp. 3d 123, 125 (DDC 2014) (citing *Prakash v. Am. Univ.* 727 F.2d 1174, 1180 (D.C. Cir. 1984)); *see also* 28 U.S.C. 1332(e) (noting that the District of Columbia is

considered a "State" for purposes of diversity jurisdiction).  "A person's '[d]omicile is determined by two factors: physical presence in a state, and intent to remain there for an unspecified or indefinite period of time.'"  *Hensley*, 59 F. Supp. 3d at 125 (quoting *Prakash*, 727 F.2d at 1180).  Whereas individuals are residents of only one state, a corporation may be a citizen of up to two states: 1) its state of incorporation and, 2) the state where its principal place of business is located.  28 U.S.C. § 1332(c)(1).  A corporation's principal place of business is its "nerve center," "the place where a corporation's officers direct, control, and coordinate the corporation's activities."  *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).  "Unincorporated associations, including LLCs, have the citizenship of each of their members."  *CostCommand, LLC v. WH Administrators, Inc.*, 820 F.3d 19, 21 (D.C. Cir. 2016) (citation omitted).

     In general, a party seeking to remove to federal court based on diversity jurisdiction must allege in its notice of removal facts demonstrating that the parties are of diverse citizenship.  *See Elghannam v. Nat'l Assoc. of Bds. of Pharmacy*, No. 15-cv-01554, 2015 WL 13158509, at *1 (D.D.C. Nov. 16, 2015) (corporate party seeking removal adequately alleged its states of citizenship based on its state of incorporation and principle place of business and alleged that plaintiff was a citizen of neither state); *Lamm v. Bekins Van Lines Co.*, 139 F. Supp. 2d 1300, 1314 (M.D. Ala. 2001) ("To invoke removal jurisdiction on the basis of diversity, a notice of removal must distinctly and affirmatively allege each party's citizenship." (citing *McGovern v. Am. Airlines*, Inc., 511 F.2d 653, 654 (5th Cir. 1975) (per curiam))); *cf. Momenian v. Davidson*, 878 F.3d 381, 389 (D.C. Cir. 2017) (removal was improper where party seeking removal only alleged parties' residences); *cf. Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").

In addition, the party seeking removal "bears the burden of proving that jurisdiction exists in federal court." *Downey*, 568 F. Supp. 2d at 30 (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (other citations omitted)); *see also Reed v. AlliedBarton Sec. Servs., LLC*, 583 F. Supp. 92, 93 (D.D.C. 2008); *accord Hertz*, 559 U.S. at 96 ("The burden of persuasion for establishing diversity, jurisdiction . . . remains on the party asserting it.") (citation omitted).  "Because of the limited jurisdiction of federal courts, any doubts as to whether such federal jurisdiction exists in any given case must be resolved in favor of remand." *Stein v. Am. Exp. Travel Related Servs.*, 813 F. Supp. 2d 69, 71 (D.D.C. 2011) (citation omitted).

But the proponents' burden of proving that the federal court has jurisdiction is not triggered unless jurisdiction is first challenged; in *Hertz*, the Supreme Court stated that the parties must support their jurisdictional allegations by "competent proof" "[w]hen *challenged* on allegations of jurisdictional facts."  559 U.S. at 96–97 (emphasis added).  The Supreme Court relied on *McNutt v. General Motors Acceptance Corp. of Indiana*, which held that when a proponent's "allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof."  298 U.S. 178, 189 (1936).  Courts in this District have followed *McNutt* in suggesting that the competent proof requirement is not triggered unless a party challenges jurisdictional facts in an "appropriate manner."  *See Scott v. Conley*, 937 F. Supp. 2d 60, 66 (D.D.C. 2013) ("If [a party's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof." (quoting *McNutt*, 298 U.S. at 189)); *James v. Lusby*, 499 F.2d 488, 493 ("[W]here the allegations as to the amount in controversy are challenged by the defendant in an appropriate manner the plaintiff must support them by competent proof.") (citation omitted); *accord District*

*of Columbia ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1044 (D.C. Cir. 1986) ("If the amended allegations are not contested, and nothing appears to the appellate court that would bar jurisdiction, jurisdiction is deemed proper, despite the [moving party]'s usual burden of alleging and proving jurisdiction.").

The requisite challenge requires more than a mere recitation; "the burden of presenting such competent proof [of jurisdiction] is not necessarily triggered by an adversary's 'simply argu[ing] [that the party seeking to establish jurisdiction has] not met [its] burden' without actually 'factually contravening [that party's] jurisdictional allegations or raising an issue of fact.'" *DC2NY, Inc. v. Acad. Bus, LLC*, No. 18-2127, 2020 WL 1536219, at *7 (D.D.C. March 31, 2020) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 900 F. Supp. 2d 8, 17 (D.D.C. 2012); *In re Lorazepam*, 900 F. Supp. 2d at 17 ("doubt[ing]" "whether simply uttering 'challenge' constitutes a challenge sufficient under *McNutt* to trigger [the party asserting jurisdiction's] burden")).  In other words, a party must raise an issue of fact to appropriately challenge jurisdiction and trigger the burden of proving it.

Thus, the issue before this Court is whether Plaintiffs' conclusory and unspecific assertion that "one of the Defendant(s)" is not diverse, Mot. to Remand at 2, is an "appropriate" challenge such that the Defendants must respond with proof of jurisdiction.[10]  *Scott*, 937 F. Supp. 2d at 66 (citation omitted).  The Court finds that it is not.[11]

---

[10] Plaintiffs repeated this assertion in a filing labeled "Summary Affirmance," again without specificity or support.  ECF No. 16 at 1.

[11] To be sure, the Court acknowledges that in the caption of the Amended Complaint, Plaintiffs list the address of Defendant "Larry Pratt CEO for First Savings Mortgage Corporation" as 6550 Rock Spring Dr. Ste 300, Bethesda, MD 20817.  *See* Sup. Ct. R. at ECF p. 26.  The Court hesitates to view an address listed in the caption as a factual challenge sufficient to trigger Defendant's burden of proving jurisdiction, particularly when there are no direct challenges to jurisdiction in the body of either the complaint or the Amended Complaint, or in Plaintiffs' remand filings.  Even so, out of an abundance of caution, the Court takes judicial

In *DC2NY*, defendant Academy Bus, LLC opposed plaintiff DC2NY's proposed amended complaint on the grounds that it would be futile, in part, because it did not sufficiently plead diversity jurisdiction. 2020 WL 1536219, at *6. Without holding that jurisdiction was proper, the Court rejected Academy Bus's jurisdictional challenge, noting that although it "point[ed] out . . . factual deficiencies with the amended pleading," it did not identify or explain how those factual deficiencies demonstrated that the Court lacked jurisdiction. *Id*. at *7. Academy Bus did "not actually say at any point (a) that the parties [were] not diverse, (b) that Academy Express LLC [was] a citizen of any state other than [that state DC2NY alleged], [or] (c) that DC2NY, Inc. [was] a citizen of anywhere other than the District of Columbia [as it alleged]." *Id*. The Court remarked, "if jurisdiction were, in fact, improper Academy most likely would have made at least one of these arguments directly, rather than only insinuating jurisdictional defects." *Id*.

Here, Defendants have adequately alleged that all twelve possibly named defendants are diverse from Plaintiffs. Not. of Removal at 4–7; Am. Not. of Removal at 4–8. Specifically, Defendants allege their states of citizenship and that each are diverse from Plaintiffs' two potential domiciles, Maryland and the District of Columbia.[12] Not. of Removal at 5–7; Am. Not.

---

notice of the fact, ascertained via internet search, that this address is a consumer-facing *branch location* (not headquarters) of First Savings, and therefore could only feasibly be construed as an allegation about First Savings' citizenship, not Larry Pratt's individual citizenship. *See Canuto v. Mattis*, 273 F. Supp. 3d 127, 133 (D.D.C. 2017) (verifying via an internet search that the plaintiff had written the wrong name for the defendant in her complaint, and instead intended to sue the corporate entity at the address she had provided); *see also Humphries v. Newman*, 2022 WL 612657, at *6 (D.D.C. Mar. 2, 2022) (taking judicial notice of a hospital's business address for the purposes of determining diversity jurisdiction). As explained below, because the Court concludes based on judicially noticeable facts that First Savings is a citizen only of Virginia, this allegation in the caption of the amended complaint does not alter the outcome of the Court's jurisdictional analysis.

[12] In the initial Notice of Removal, the removing defendants stated that Larry Pratt is a resident of Virginia. *See* Not. of Removal ¶ 17. In the Amendment to the Notice of Removal,

of Removal at 4–8; *see Elghannam*, 2015 WL 13158509, at \*1.  Like the defendant who

challenged jurisdiction in *DC2NY*, Plaintiffs have not directly argued that either they or any

Defendant is a citizen of a different state than Defendants have alleged.  All they have said is that

"all of the parties fall under the diversity . . . jurisdiction except for *one* of the Defendant(s),"

without specifying which one.  Mot. to Remand at 2 (emphasis added).  To treat this as an

appropriate challenge would put Defendants in the untenable position of having to provide

competent proof without fair notice of what sort of proof to offer or on behalf of which

defendants to offer it.  The Court declines to do so.  In short, whatever the precise requirement

for an "appropriate challenge," in a multi-defendant case such as this, Plaintiffs' cursory

assertion does not meet it.

Putting aside Plaintiffs' defective challenge, this Court must still assure itself it has

jurisdiction.  *See*, *e.g.*, *Amer. Library Ass'n v. F.C.C.*, 401 F.3d 489, 492 (D.C. Cir. 2005).  For

several reasons, the Court is satisfied that it does.

First, the Court's own review of the filings reveals no obvious infirmity in Defendants'

jurisdictional allegations.  Defendants allege that Plaintiffs are domiciled in either Washington,

D.C. or Maryland.  Not. of Removal ¶ 5.  They further allege in their original Notice of Removal

---

they instead state that Larry Pratt is a resident of Florida and is domiciled in Florida.  *See* Am.
Not. of Removal at 5.  Pratt himself, who appeared after the initial Notice of Removal and
moved to dismiss for failure to state a claim, has not presented any allegations of his own
regarding his citizenship.  The Court observes the discrepancy between the removing defendants'
initial and amended allegations regarding Pratt's citizenship but concludes that it does not matter
for the instant analysis.  The removing defendants have alleged that Pratt is a citizen of either
Virginia or Florida, which makes him diverse from Plaintiffs, who are only citizens of D.C. or
Maryland.  As the Court explained in footnote 11, Plaintiffs have not made any allegation that
Larry Pratt, the individual, is a citizen of D.C. or Maryland.  Indeed, they have not said anything
about Pratt's citizenship at all.  Therefore, they have not presented any challenge to the removing
defendants' allegations that Pratt is not a citizen of either D.C. or Maryland, much less done so in
an "appropriate manner" sufficient to trigger the removing defendants' burden of proving
jurisdiction.  *Scott*, 937 F. Supp. 2d at 66 (quoting *McNutt*, 298 U.S. at 189).

and Amended Notice of Removal that no Defendant is a citizen of either D.C. or Maryland. *Id.* ¶ 6; Am. Not. of Removal at 4–8.  Plaintiffs have nowhere persuasively controverted these facts. *See District of Columbia ex rel. Am. Combustion*, 797 F.2d at 1045 ("[U]nless Transamerica denied ACI's allegations of diversity, triggering the requirement that ACI affirmatively prove the facts necessary to support a finding of diversity, the amended allegations here support a finding of diversity jurisdiction."); *cf. Novak v. Capital Management and Development Corp.*, 452 F.3d 902, 906 (D.C. Cir. 2006) (noting defendants failed to allege their states of citizenship and only alleged plaintiffs' residency).  Thus, nothing in the record gives the Court pause.

Second, out of an abundance of caution, the Court has reviewed the annual reports filed with the SEC by the publicly traded corporate defendants potentially named in this suit, and they each square with the states of incorporation and principal places of business[13] alleged in the Notice of Removal, none of which is Maryland or D.C.  *See DiLorenzo v. Norton*, No. 07-cv-144, 2009 WL 2381327, at *2 n.7 (D.D.C. July 31, 2009) ("Because SEC filings are matters of public record, they are properly the subject of judicial notice, and therefore the Court may, and will, consider them on review of defendant's motion to dismiss." (citing *Marshall Cnty. Health Care Auth. V. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993)).  To confirm the citizenship of First Savings, a private company, the Court has reviewed the Virginia State Corporation Commission ("SCC") filings to confirm that First Savings' place of incorporation is Virginia, as alleged in the Notice of Removal.  *See Robo-Team NA, Inc. v. Endeavor Robotics*, 313 F. Supp.

---

[13] The Court views the annual reports' designated "principal executive office[s]" as sufficient proxies for the Defendants' principal places of business.  *See Hertz*, 559 U.S. at 93 (noting that a corporations' principal place of business will "in practice . . . normally be the place where the corporation maintains its headquarters.").  To the extent the officer Defendants are the intended Defendants in this suit, judicially noticeable documents cannot verify their alleged domiciles.

3d 19, 23 n.1 (D.D.C. 2018) ("Courts may take judicial notice of public records of corporate filings maintained online by state Secretaries of State to determine a company's place of incorporation." (citing *In re Lorazepam & Clorazepate Antitrust Litig.*, 900 F. Supp. 2d 8, 18 (D.D.C. 2012)). The Virginia SCC filings also list First Savings' principal office in Virginia, consistent with the allegation in the Notice of Removal. Plaintiffs list a Maryland address for First Savings in the Amended Complaint, but as the Court has explained, this address is not the "nerve center" of First Savings—it is a consumer-facing branch location with no bearing on diversity jurisdiction. *See Hertz*, 559 U.S. at 92–93. Because there appear to be no "litigants from the same state on opposing sides," *Saadeh*, 107 F.3d at 55, Defendants have sufficiently alleged diversity jurisdiction.

For the reasons set forth above, this Court has jurisdiction and will rule on the moving Defendants' motions to dismiss for failure to state a claim.

## IV.  ANALYSIS—MOTIONS TO DISMISS[14]

### A.  Standard of Review

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate

---

[14] At this stage, the Court only resolves claims against the moving Defendants because the non-moving Defendants have neither filed nor joined in any of the motions to dismiss. In addition, while it appears none of the Defendants were properly served with the Complaint, the moving Defendants have moved to dismiss for failure to state a claim, not for insufficient service, and therefore the Court finds the moving Defendants have waived the defense of insufficient service. *See Raynor v. District of Columbia*, 296 F. Supp. 3d 66, 71 (D.D.C. 2017) ("Rule 12(h)(1) of the Federal Rules of Civil Procedure states that the defense for insufficient service of process shall be deemed waived if it is not included in a motion under Rule 12.").

likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor.  *See, e.g., United States v. Philip Morris, Inc.*, 116 F.Supp.2d 131, 135 (D.D.C.2000).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007) (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Iqbal,* 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations, *see Twombly,* 550 U.S. at 555.

## B.  Choice of Law

The parties have not briefed the choice of law issues presented in this case.  "'[F]ederal courts are to apply state substantive law and federal procedural law' when sitting pursuant to their diversity jurisdiction."  *Burke v. Air. Serv. Int'l, Inc.*, 685 F.3d 1102, 1107 (D.C. Cir. 2012) (quoting *Hanna v. Plumer,* 380 U.S. 460, 465 (1965) (other citations omitted)).  It follows that "[a] federal court sitting in diversity must apply the choice-of-law rules of the forum state—here, the District of Columbia."  *Beach TV Properties, Inc. v. Solomon*, 306 F. Supp. 3d 70, 92 (D.D.C. 2018) (quoting *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014).  "The

District of Columbia 'employ[s] a modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute.'" *Id.* (quoting *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006) (brackets original).

> In tort cases,
>
> [u]nder the governmental interest test, a court must consider "the governmental policies underlying the applicable law and determine[] which jurisdiction's policy would be the most advanced by the application of its law to the facts of the case, taking into consideration (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship is centered.

*LoPiccolo v. American University*, 840 F. Supp. 2d 71, 75–76 (D.D.C. 2012) (citation omitted). "Where each state would have an interest in the application of its own law to the facts, the law of the jurisdiction with the stronger interest will apply," but "[i]f the interests of the jurisdictions in the application of their law are equally weighty, the law of the forum will be applied." *Williams v. First Gov't Mortg. and Invs. Corp.*, 176 F.3d 497, 499 (D.C. Cir. 1999) (cleaned up).

On the other hand, in contract cases in which the contract contains an "express contractual choice-of-law provision[]," District of Columbia courts will enforce such provisions "so long as there is some reasonable relationship with the state specified." *Sickle v. Torres Advanced Enterprise Solutions, LLC*, No. 11-cv-2224, 2020 WL 5530357, at *7 (D.D.C. Sep. 14, 2020) (quoting *Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1394 (D.C. Cir. 1995); *accord B&S Glass, Inc. v. Del Metro*, No. 20-cv-2769, 2021 WL 3268360, at *5 (D.D.C. July 30, 2021). As explained below, the Court finds it proper to apply the District's substantive law to all issues.

### C. Plaintiffs' Claims[15]

Plaintiffs assert wrongful foreclosure, breach of contract, quiet title, and slander of title claims in relation to the impending foreclosure of the Property.  Sup. Ct. R. at ECF pp. 34–49. The moving Defendants contend that all claims should be dismissed under Fed. R. Civ. P 12(b)(6).  Mot. to Dismiss at 6, 8.

#### 1.  Lack of Standing/Wrongful Disclosure[16]

The Court understands Plaintiffs to assert that Defendants lack standing to foreclose on two grounds: 1) Defendants "failed to perfect any security interest in the" Property or "cannot prove to the court that they have a valid interest . . . [in the] Deed of Trust"; and 2) the Defendants engaged in fraud "in the processing, handling and attempted foreclosure" of the property.  Sup. Ct. R. at ECF p. 43.  The moving Defendants claim that the Deed's "power of sale" provision authorizes foreclosure, Mot. to Dismiss at 8; Pratt Mot. to Dismiss at 8, and that Plaintiffs fail to adequately plead fraud, Pratt Mot. to Dismiss at 7–8.

The Court will apply D.C. substantive law to all of Plaintiffs' wrongful foreclosure claims because the Deed is governed by D.C. law, and all of Plaintiffs' claims under this heading

---

[15] This Court has on two occasions instructed Plaintiffs to respond to the moving Defendants' motions to dismiss.  Plaintiffs have filed motions in response, but none of these motions address the arguments raised in the moving Defendants' motions.  *See* First *Fox*/*Neal* Order; Second *Fox*/*Neal* Order.  However, given Plaintiffs' *pro se* status, and because the Court is confident that no further briefing would change the outcome of this case, the Court declines to treat Defendants' motions to dismiss as conceded and instead reaches the merits.

Furthermore, for purposes its motion-to-dismiss analysis, this Court will treat Plaintiffs' Amended Complaint as supplementing rather than superseding their original Complaint.  *See Hunter*, 485 F. Supp. 3d at 73 ("[W]here a pro se party has filed multiple submissions, the district court must generally consider those filings together and as a whole.") (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999).

[16] The Court does not address Plaintiffs' related claims against MERS, as MERS has not made an appearance in this case.

arise out of Defendants' alleged lack of interest in the Deed.  First, the Deed's choice of law

provision clearly intends for District of Columbia law to apply.  The clause states that the Deed

"shall be governed by . . . the law of the jurisdiction in which the Property is located."  Deed of

Trust at ECF p.12.[17]  There is no dispute that the Property is located in Washington, D.C., *see*

Sup. Ct. R. at ECF p. 35, and therefore the parties to the Deed anticipated the application of D.C.

law.  Second, because the Property subject to the Deed is located in the District, the Deed itself

necessarily bears a "reasonable relationship" with the District of Columbia.  *Sickle*, 2020 WL

5530357, at *7 (quoting *Ekstrom*, 68 F.3d at 1394); *see also Williams v. First Gov't. Mortg. and

Inv. Corp*., 176 F.3d 497, 499 (D.C. Cir. 1999) (applying District of Columbia law in suit

seeking to enjoin foreclosure of property located in D.C.).  Therefore, the Deed's choice-of-law

provision controls.

    *Failure to Perfect*.  Plaintiffs do not specify in what way Defendants have failed to

perfect their security interest.  The Court understands Plaintiffs to mean 1) the Note was not

"transfer[ed] in [the] ordinary course of business," Sup. Ct. R. at ECF p. 39, and 2) that the Note

and Deed were not "contemporaneous[ly] assign[ed]" and are therefore "irreparably separated,"

*id*. at ECF p. 42.  At bottom, Plaintiffs appear to challenge the assignment of the security interest

in the Deed, which contains the "power of sale" clause.

    In general, a borrower lacks standing to challenge the assignment of a note.  *See Bank of

New York Mellon Trust Co. N.A. v. Henderson*, 107 F. Supp. 3d 41, 45 (D.D.C. 2015) ("Because

defendant has not alleged that he is either a party to, or an intended beneficiary of, the

---

[17] This Court will consider the Deed without converting Defendants' motions into
motions for summary judgement because the Deed is referenced in Plaintiffs' Complaint.  *See,
e.g.*, Sup. Ct. R. at ECF p. 36, ¶ 13; *Malek v. Flagstar Bank*, 70 F. Supp. 3d 23, 29 n.4
(considering deed of trust referenced in complaint and attached to motion to dismiss).

assignment of the Note and Deed of Trust, he does not have standing to attack the assignment.");
*Jessup v. Progressive Funding*, 35 F. Supp. 3d 25, 35 (D.D.C. 2014) ("Jessup has not pled facts
showing that she is either a party to, or an intended beneficiary of, the assignment agreement.
Accordingly, Jessup has not established that she has standing to challenge the validity of any
assignment of the Note and Deed."); *Rivera v. Rosenberg & Associates, LLC*, 142 F. Supp. 3d
149, 156 (D.D.C. 2015) (same).  The *Henderson* court explained why this rule "makes good
sense":

> [T]he assignment does not affect [the borrower's] rights or obligations at all.
> Regardless of whether the Note and Deed of Trust were properly assigned, [the
> borrower is] still required to make timely payments on his mortgage and, by the
> plain terms of the Note and Deed of Trust, he [or she] is subject to foreclosure upon
> default.

107 F. Supp. 3d at 45.  Because Plaintiffs are not beneficiaries of the assignment of the Note,
they fail to state a claim on this ground.

The allegation that the Note and Deed were not contemporaneously assigned does not
change the Court's conclusion.  "When a contract incorporates another writing, the two must be
read together as the contract between the parties."  *W. Surety Co. v. U.S. Eng'g Co.*, 211 F. Supp.
3d 302, 308 (D.D.C. 2016) (quoting *Sheriff v. Medel Elec. Co.*, 412 A.2d 38, 41 (D.C. Ct. App.
1980)).  *See also Horvath v. Bank of New York, NA*, 641 F.3d 617, 624 (4th Cir. 2011) ("[N]otes
and contemporaneous written agreements executed as part of the same transaction will be
construed together as forming one contract.").  Here, the Deed's Release clause references the
Note as "sums secured by this Security Instrument."  Deed of Trust at ECF p. 14; *see* Note ¶ 11,
ECF No. 3-2 ("In addition to the protections given to the Note Holder under this Note, a . . .
Deed of Trust . . . (the 'Security Instrument') dated the same date as this Note, protects the Note
Holder.").  Thus, the Deed incorporates Plaintiffs' obligations under the Note, and the transfer of
the interest in the Note in no way abrogates said obligations.  As the Fourth Circuit explained in

*Horvath*, "there would be little reason for notes to exist" without "the[ir] defining feature of . . . transferability."  641 F.3d at 624.  Therefore, Plaintiffs fail to state a claim on this ground.

     *Fraud*.  Pratt argues that Plaintiffs have not adequately plead fraud.  Pratt Mot. to Dismiss at 7–8.  Federal Rule of Civil Procedure 9(b) requires that a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "The rule serves to discourage the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude . . . . And because 'fraud' encompasses a wide variety of activities, the requirements of Rule 9(b) guarantee all defendants sufficient information to allow for preparation of a response."  *United States ex rel. Joseph v. Cannon,* 642 F.2d 1373, 1385 (D.C. Cir. 1981).  "Rule 9(b) applies with equal strength to defendants sued by a *pro se* litigant . . . [and] requires that the pleader provide the who, what, when, where, and how with respect to the circumstances of that fraud."  *Tefera v. OneWest Bank, FSB*, 19 F. Supp. 3d 215, 223 (D.D.C. 2014) (quotation omitted).

     Plaintiffs fall short of Rule 9(b)'s heightened pleading standard.  The Complaint states neither the time, place, nor content of the alleged misrepresentation.  Even construing the claim liberally, the Court cannot identify the substance of the allegedly fraudulent statements.  Therefore, Plaintiffs fail to state a claim on this ground as well.

     *Power of Sale*.  The moving Defendants argue that the Deed's power of sale clause authorizes them to foreclose on the Property.  Mot. to Dismiss at 8; Pratt Mot. to Dismiss at 8.  "Power of sale foreclosures are referred to as non-judicial foreclosure and are initiated privately by the mortgagor/lender."  *Rogers v. Advance Bank*, 111 A.3d 25, 29 (D.C. Ct. App. 2015) (citation omitted); *Leake v. Prensky*, 798 F. Supp. 2d 254, 256 (D.D.C. 2011) ("The District of Columbia is a non-judicial foreclosure jurisdiction, which allows foreclosure pursuant to a

22

'power of sale provision contained in any deed of trust.'") (quoting D.C. Code § 42-815)).  "In short, non-judicial foreclosures are private debt collection procedures conducted without participation by the court."  *Rogers*, 111 A.3d 29. (citing *Pappas v. E. Sav. Bank, FSB*, 911 A.2d 1230, 1237 (D.C. 2006)).  The Deed at issue here provides for the "power of sale."  Deed of Trust at ECF p. 4.  Because, as described above, Plaintiffs have not adequately pled fraud, the Court finds that the Deed's power of sale provision controls.

In summary, Plaintiffs fail to state a claim that the Defendants lack standing to foreclose on any of their asserted grounds.  The Court therefore dismisses this claim.

## 2.  Breach of Contract

Plaintiffs allege that the Release clause in the Deed obligates Defendant First Savings to release the Deed because First Savings was "paid in full" by transferring its interest therein.[18] Sup. Ct. R. at ECF p. 46.  The Court understands Plaintiffs' allegation to assert that, because First Savings was paid by a third-party to the Deed for First Savings' interest in the same, Plaintiffs were released from their obligation to pay the Note.  District of Columbia law governs Plaintiffs' breach of contract claim for the same reasons it governs the wrongful foreclosure claims.  Applying District of Columbia law, the Court finds that Plaintiff fails to state a claim for breach of contract.

"To prevail on a breach of contract [claim] pursuant to District of Columbia law, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach."  *Dean v. Walker*, 876 F. Supp. 2d 10, 13 (D.D.C. 2012) (citing *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187

---

[18] Plaintiffs may instead be referring to the transfer of the Deed to the Trust.  Sup. Ct. R. at ECF p. 46.  This would not change the Court's analysis, because that arrangement is exactly what a Deed of Trust requires.  *See*, *e.g.*, D.C. Code § 42-601.

(D.C. 2009).  Plaintiffs' reading of the Release clause as obligating First Savings to release Plaintiffs from their obligations under the Note is unsupported by the clause's plain language. *See Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 108 (D.D.C. 2013) ("[A] court 'may dismiss a complaint based on a contract if the contract unambiguously shows that the plaintiff is not entitled to the requested relief.'") (quoting *DynCorp v. GTW Corp.*, 215 F. Supp. 2d 308, 315 (S.D.N.Y. 20020)).  The Release clause states, "Upon payment of all sums *secured by this Security Instrument*, Lender shall request Trustee to release this Security Instrument." Deed of Trust at ECF p. 14. (emphasis added).  As described above, the secured sums are Plaintiffs' obligations under the Note.  *See* Note ¶ 11, ECF No. 3-2.  Plaintiffs do not allege that they have paid off the Note.  Thus, even reading the allegations in the light most favorable to Plaintiffs, the Release clause could not have been triggered.  The Court therefore dismisses this claim.

### 3.  Quiet Title

Plaintiffs' assert their quiet title claim on the ground that Defendants lack an interest in the Property.  *See* Sup. Ct. R. at ECF pp. 46–47.  The moving Defendants argue that Plaintiffs cannot establish they have superior title because "their Loan [the Note] has [not] been paid off or otherwise forgiven."  Mot. to Dismiss at 7.  The Property is located in D.C., so D.C. law governs this claim.  *See, e.g.*, *Jessup v*, 35 F. Supp. 3d at 34 (D.D.C. 2014); *Diaby v. Bierman*, 795 F. Supp. 2d 108, 111–113 (D.D.C. 2011); *see* Sup. Ct. R. at ECF p. 35.  "Successful quiet title actions require a plaintiff to establish that [he or] she has superior title to the property."  *Jessup*, 35 F. Supp. 3d at 36 ("The plaintiff has the burden of showing a title or right superior to that of the defendant as a prima facie case, which means that the plaintiff must at least prove a title

better than that of the defendant, which, if not overcome by the defendant, is sufficient." (citing 74 C.J.S. Quieting Title § 77 (2014)) (cleaned up)).

In *Jessup*, the court dismissed a quiet title claim when the plaintiff alleged that she had conveyed a Deed of Trust with power of sale, but did not allege that she had paid off the Note. *Id.*  Plaintiffs' complaint suffers from the same deficiency.  Sup. Ct. R. at ECF pp. 46–47. Therefore, even construing the facts most favorable to Plaintiffs, it appears the property is still encumbered by a loan.  While Plaintiffs' assert in conclusory fashion that they are superior title holders, absent an allegation that they have satisfied their obligations under the Note, they cannot so prove.  Therefore, the Court dismisses Plaintiffs' quiet title claim.

### 4. Slander of Title

Plaintiffs allege two facts in support of their slander of title claim: 1) Defendants failed to publicly record certain interests in the property; and 2) Defendants did record the assignment of the Deed to Mellon in 2012.  Sup. Ct. R. at ECF p. 47.  The Court finds that neither of these grounds state a claim.

In determining which law governs a tort case, D.C. courts determine the respective states' "governmental interest" in the suit by "taking into consideration (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship is centered."  *LoPiccolo*, 840 F. Supp. 2d at 75–76 (citation omitted).

The Court finds that D.C. law governs Plaintiffs' slander of title claims.  As for the first factor, the injury occurred in D.C. where the allegedly-slandered Property is located.  As for the second, the Assignment of the Deed was notarized in Minnesota, *see* Assignment of Deed of

Trust at ECF p. 2, ECF No. 3-4, a state only one party appears to have any connection with. As for the third, based on Defendants' unrefuted allegations, the Plaintiffs are citizens of D.C. or Maryland, and Defendants are citizens of at least as many different states as Florida, Connecticut, New York, Delaware, Michigan, Minnesota, Virginia. Not. of Removal at 4–7; *see* Am. Not. of Removal at 6–7 (alleging certain officer Defendants are not citizens of Maryland or the District without identifying which state they are citizens of). As for the fourth, the relationship between the parties appears to center around location of the Property in the District. Because two of the factors clearly favor applying D.C. law, and because the District unquestionably has an interest in the application of D.C. law to suits involving property in the District, the Court applies D.C. law. *See Pace v. Wells Fargo Bank, N.A.*, No. 16-cv-1706, 2020 WL 1667658 at *9 (D.D.C. April 3, 2020) (applying District of Columbia law in slander of title claim based on assignment of deed of trust).

"To establish a claim for slander of title, the plaintiff must prove: (1) a communication relating to the title of property was false and malicious; (2) damages resulted from the publication of the statement; and (3) if special damages are sought, the underlying damages must be pled with specificity." *Bloom v. Beam*, 99 A.3d 263, 266 (D.C. Ct. App. 2014) (citing *Psaromatis v. English Holdings,* 944 A.2d 472, 488 n. 20 (D.C.2008)). The Court finds that Plaintiffs' first alleged ground for a slander of title action does not state a claim. Defendants' alleged failure to record their interests is not a "communication" or a "publication of [a] statement." *Id*. In fact, a failure to record it is exactly the opposite.

Plaintiffs' second alleged ground likewise does not state a claim. Although the recording of the transfer of the interest in the property to Mellon was a communication, Plaintiffs' have not demonstrated that the recording was false or malicious in anyway. *See* Assignment of Deed of

Trust at ECF p. 2, ECF No. 3-4.  Because Plaintiffs do not state a claim for slander of title, the Court dismisses the claim.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand is **DENIED**, and the moving Defendants' Motions to Dismiss are **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  08/31/2022                                                RUDOLPH CONTRERAS
                                                                          United States District Judge